IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRY LANELL SMITH, :
:
    Plaintiff, :
:
vs. : CIVIL ACTION 11-0203-M
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security,:
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 17). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 23). Oral argument was waived in this action (Doc. 25). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further proceedings not inconsistent with the Orders of the Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).

At the time of the administrative hearing, Plaintiff was forty-nine years old, had completed an eleventh-grade education (Tr. 44), and had previous work experience as a car detailer (Tr. 47). Smith alleges disability due to a gunshot wound to the dominant upper extremity (Doc. 17 Fact Sheet).

The Plaintiff filed protective applications for disability insurance and SSI benefits on August 5, 2008 (Tr. 122-28; *see* Tr. 10). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he was not capable of performing his past work, Smith was capable of performing specified light work jobs (Tr. 10-20). Plaintiff requested review of the hearing decision (Tr. 6) by the Appeals

Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Smith alleges that: (1) The ALJ made improper findings regarding his residual functional capacity (hereinafter *RFC*); and (2) the ALJ did not pose a complete and proper hypothetical question to the Vocational Expert (hereinafter *VE*) (Doc. 17). Defendant has responded to—and denies—these claims (Doc. 20). The relevant medical evidence of record follows.

In a report dated December 18, 1990, from St. Joseph Medical Center in Ft. Wayne, Indiana, Dr. Jeffrey Nipper removed sutures after a distal radial bone graft reconstruction, with DCP plate placement, following a gunshot wound to Smith's right forearm (Tr. 252-53). The splint was removed and the surgical incision was noted to be well-healed. Stability of the distal radial reconstruction was intact. The wrist range of motion (hereinafter *ROM*) was as follows: "Radial deviation 0, ulnar deviation 15 degrees, wrist flexion 30 degrees, wrist extension 0 degrees. MP ranges of motion 1-5 0 to 30 degrees, PIP joint from 2-5 is 5 to 80 degrees, DIP from 2-5 is 5 to 70 degrees and IP joint of the thumb is 5 to 30 degrees" (Tr. 253). Nipper noted that this was loss of "a good deal of motion" (*id.*).

3

Plaintiff was encouraged to continue with passive ROM, but to force the motions a bit at the digits. The doctor indicated doubt whether wrist function could ever be salvaged. On January 22, 1991, Dr. Howard W. Sharf noted no change in the finger ROM (Tr. 255).

No more medical evidence is available concerning this impairment until August 5, 2008 when Dr. H. John Park, an Orthopedic, noted that Smith had trouble making a fist though he was able to flex his thumb and finger (Tr. 216-17; *see generally* Tr. 216-30). Plaintiff was unable "to oppose the thumb and little finger. Fingertip to palm distance [was] about 1.5 inches. He [had] a significant flexion contracture of his IP and DIP joint. He [had] significant thenar muscle atrophy" (Tr. 216). Park noted that Smith could only actively flex his wrist about twenty degrees. It was the Orthopedic's opinion that Plaintiff "certainly has almost 100% impairment rating regarding use of his right hand, forearm and wrist" (Tr. 217). He further stated that "within reasonable medical certainty, [Smith was] disabled as far as the use of his right hand and right arm" (*id.*). Though Dr. Park held out the possibility of reconstructive surgery, Plaintiff was not interested.

On October 7, 2008, Dr. Marcus Whitman indicated that

Plaintiff could perform light work (Tr. 214). This is the complete substance of this Social Security Administration (hereinafter *SSA*)- generated form.

On January 12, 2009, a person named Sarah Singleton, working for the SSA, completed a physical RFC assessment which indicated that Plaintiff was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing or walking about six hours in an eight-hour day, and sitting about six hours during an eight hour day (Tr. 185; *see generally* Tr. 184-91). Singleton went on to suggest that Plaintiff could only occasionally climb stairs, stoop, kneel, crouch, and crawl and that he could never climb a ladder (Tr. 186); she also indicated that Plaintiff could never use his right hand for reaching in any direction or for gross or fine manipulation (Tr. 187).

In his determination, the ALJ "assigned some weight to the claimant's treating physician, Dr. Park that the claimant has sustained injury to his right hand, forearm and wrist based on a prior gunshot wound; however, there are no diagnostic tests to substantiate the current diagnosis or prognosis of a 100% impairment rating" (Tr. 18). The ALJ went on to explain that he had discounted Park's conclusions because he had relied on "the claimant's medical record from 1990, **a physical examination** and

5

the claimant's subjective complaints" (*id.*) (emphasis added). The ALJ further noted that the opinion was based on a single examination.

The ALJ further stated as follows: "A Physical Summary form completed by state agency medical consultant Marcus Whitman, M.D., indicated the claimant could perform a range of light work. (Exh. 6F) I agree with this assessment and find the claimant is capable of light work activity with the restrictions noted above" (Tr. 18). The ALJ did not acknowledge the report by Sarah Singleton. This concludes the relevant medical evidence.

Smith claims that the ALJ made improper findings regarding his RFC (Doc. 17, pp. 4-7). The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2011).

The ALJ determined that Plaintiff was capable of performing a reduced range of light work. More specifically, the ALJ found as follows:

> [T]he claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently; limited use of right hand for simple grasping, fine manipulation and fingering; limited reaching overhead, particularly with right arm and shoulder; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. No unprotected heights and

6

>     hazardous machinery. The claimant has no
>     visual or communicative limitations.
>     Unskilled work.

(Tr. 14). The Court notes that this RFC mirrors the RFC completed by Sarah Singleton (*cf.* Tr. 184-91), a report completed by non-medical personnel working for the SSA that was not even acknowledged by the ALJ. The Government correctly notes that the ALJ cannot rely on this evidence in making his decision (Doc. 20, pp. 8-9) (*citing* Program Operations Manual System DI214510.050C, 2001 WL 193365).

The Court notes that the ALJ did rely, however, on the opinion of Dr. Whitman, a non-examining physician whose only contribution to the record was a statement that Plaintiff could perform light work. "This Court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician." *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003). The ALJ's conclusion that Plaintiff is capable of performing jobs which exist in the national economy based on the opinions of a non-examining physician is not supported by substantial evidence.

The Court understands the Government's argument that the ALJ determines the RFC and that he can reject opinions that he does not think are supported by substantial evidence. Nevertheless, for the ALJ to rely on the opinion of a non-examining physician whose only finding is that Smith can perform light work, while rejecting the opinion of the only examining physician, a specialist, who the ALJ himself referred to as the treating physician, fails to meet the requirement of *Perales* and *Brady*.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Smith's ability to use his right hand and arm. For further procedures not inconsistent with this Order, see *Shalala v. Schaefer*, 509 U.S. 292 (1993). Judgment will be entered by separate Order.

DONE this 19th day of December, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE